UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| STEVEN W. PRITT, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 1:16-cv-03125-JMS-DML |
|  | ) |  |
| DEPUTY BRANDOU, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**Entry Discussing Cross Motions for Summary Judgment on Exhaustion**

Plaintiff Steven Pritt, who at all relevant times was incarcerated at the Marion County Jail ("MCJ"), brought this civil rights action pro se pursuant to 42 U.S.C. § 1983 against defendant Deputy Brandou. Mr. Pritt alleges that Deputy Brandou assaulted him on July 14, 2016, without cause during his short stay at MCJ. Deputy Brandou raised the affirmative defense that Mr. Pritt failed to exhaust his administrative remedies regarding this claim before bringing this action as required by the Prison Litigation Reform Act ("PLRA"). In response, Mr. Pritt filed a "dispositive motion" arguing that he exhausted his administrative remedies, which the Court construed as a motion for summary judgment. Deputy Brandou filed a cross motion for summary judgment. Mr. Pritt has responded, and Deputy Brandou has replied. For the reasons explained in this Entry, the undisputed evidence shows that MCJ's grievance process was not available to Mr. Pritt, and thus Deputy Brandou's exhaustion defense must be **rejected**.

**I.
Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
## Background

As stated, the parties both move for summary judgment on Deputy Brandou's affirmative defense that Mr. Pritt's claim is barred under the exhaustion provision of the PLRA. *See* 42 U.S.C. § 1997e. That provision requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit. The parties both present evidence supporting their respective positions. The Court will set forth the evidence presented by each party in turn, all of which is undisputed.

### A. Deputy Brandou's Evidence

Mr. Pritt was transferred to MCJ on July 13, 2016. All inmates receive an Inmate Handbook upon arrival at MCJ. The Inmate Handbook, among other things, sets forth the grievance procedure for inmates at MCJ. The Inmate Handbook states, "[a]ny and all complaints or grievances concerning the jail, its conditions, its functions (including medical services), or the staff may be forwarded to the grievance deputy." Filing No. 39-1 at 5. The complete grievance

process includes three steps: (1) informal grievance; (2) formal grievance; and (3) grievance appeal.

Only the informal grievance step is relevant here, as it is undisputed that Mr. Pritt did not file an informal grievance. The Inmate Handbook states that "[a]n *informal grievance* shall be filed within forty-eight (48) hours of the incident on an informal grievance form, which may be requested from the *mailroom staff*." Filing No. 39-1 at 5 (emphasis in original). Further, "[a]n *informal grievance form* may be submitted to mailroom staff in an envelope also provided by mailroom staff. Mailroom staff will deliver the informal grievance to the Grievance Deputy." Filing No. 39-1 at 5. If this is completed, the Inmate Handbook provides that "[a] written resolution will be delivered to the inmate within fifteen (15) days." Filing No. 39-1 at 5.

Other than the Inmate Handbook, the only other evidence submitted by Deputy Brandou is the affidavit of Rachel Gohman, who is the Lead Paralegal at the Marion County Sheriff's Office. As such, she is familiar with the grievance database, and attests that a search of the database "found no record of any complaint or grievance filed by Steven Pritt in July 2016." Filing No. 39-1 at 1. Beyond this, she testifies only that all inmates received a copy of the Inmate Handbook when they arrive at MCJ. *See* Filing No. 39-1 at 1.

**B.     Mr. Pritt's Evidence**

Mr. Pritt, in his initial motion for summary judgment, argues that the remedy process was unavailable to him. Specifically, he argues that he was denied grievance forms and, due to his physical and mental condition, was unable to complete the grievance process. After Deputy Brandou filed his motion for summary judgment with the evidence outlined above, Mr. Pritt submitted a wide range of evidence and arguments regarding both exhaustion and the merits of his

underlying claim (and other claims not proceeding in this action). Only a small portion of it is relevant to the question of exhaustion, and is set forth below.

Mr. Pritt submitted two declarations. The first, which was submitted at the beginning of this action in support of his motion for a preliminary injunction, details a litany of things that occurred to him during his short stay at MCJ. Relevant here are the following attestations. Early in his stay at MCJ, an unnamed Deputy (through discovery identified as defendant Deputy Brandou) escorted Mr. Pritt to medical. During the escort, Deputy Brandou slammed him against the wall, stomped on his left foot, and kneed him in the thigh, yelling "you don't listen." Filing No. 40-1 at 12. Once at medical, the nurse took Mr. Pritt's vitals and asked if he had open wounds. Deputy Brandou gave Mr. Pritt the "stink eye," and Mr. Pritt said "no not yet but prob[ably] some bruises." Filing No. 40-1 at 12. Mr. Pritt explained his other health problems and requested his medication, but the nurse said he needs to submit a medical request. Filing No. 40-1 at 12. After several hours in a holding cell, another Deputy escorted Mr. Pritt to medical again, during which the nurse again instructed him that in order to obtain his medications he needed to submit a medical request.

The second declaration was prepared by Mr. Pritt after Deputy Brandou filed an answer but before the Court stayed all activities in this action pending the resolution of Deputy Brandou's exhaustion defense. This declaration sets forth an abridged version of the events detailed in his first declaration. The overall course of events are essentially the same, although some additional details are included. Critical here is Mr. Pritt's assertion that, during the second nurse visit, after being again instructed to submit a medical request for his medication, he asked for medical request forms and a grievance form. The nurse responded that "she did not have them." Filing No. 40-1 at 19.

Mr. Pritt then describes how, after several hours in the detainment cell, he was placed in a cell with other inmates who were using drugs. Shortly thereafter, Mr. Pritt was placed on suicide status; he was told by an unnamed deputy that this was "because you're not taking your medication" and that he should "just sit tight for a few days and get through [his post-conviction court hearing]." Filing No. 40-1 at 14.

In both of his declarations, Mr. Pritt describes how, while he was on suicide status, he requested his medication every time the medical cart would pass by, but never received it. Then, he "asked for a request card to make a request to medical each time to which the Sheriff and medical personnel had none or couldn't get me one. I asked them [will they] give me a request form to fill out and they told me I'm in suicide and not allowed to have paper or writing utensils. They will not give me either." Filing No. 40-1 at 19.

After ten days at the MCJ, Mr. Pritt was transferred back to New Castle Correctional Facility on July 21, 2016.

## III.
## Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The exhaustion requirement "is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). Moreover, the

"exhaustion requirement is strict. A prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King*, 781 F.3d at 893.

"At the same time, the [PLRA] requires exhaustion only of remedies that are 'available.'" *Id.* "Prison officials may not take unfair advantage of the exhaustion requirement," and if they do, their conduct can make the remedy process "unavailable." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

The parties do not dispute that Mr. Pritt did not complete the three-step grievance process set forth in MCJ's Inmate Handbook. At issue is whether the grievance process was available to Mr. Pritt, as Mr. Pritt repeatedly argues that he was not provided grievance forms and was otherwise unable to complete the grievance process.

Mr. Pritt's undisputed evidence shows that, other than two visits to the nurse's office and a few several-hour stays in other cells, he spent the entirety of his time at MCJ on suicide status. While on suicide status, Mr. Pritt continuously asked MCJ staff who passed his cell if they would "give me a request form to fill out," and they responded that he is on "suicide and not allowed to have paper or writing utensils," so they would not give him "either." Filing No. 40-1 at 19. If Mr. Pritt could not have writing utensils, let alone a request form, it is evident that he could not contact mailroom staff to request an informal grievance as required by the Inmate Handbook. Given this evidence, the Court of course must reject Deputy Brandou's contention that Mr. Pritt "does not allege . . . that anything prevented him from [contacting mailroom staff]." Filing No. 50 at 3.

Not only could Mr. Pritt not contact mailroom staff while on suicide status without writing utensils or request forms, he specifically attests that he requested a grievance form from the nurse during a medical check, but she responded that she did not have one. *See* Filing No. 40-1 at 19. Deputy Brandou attempts to undermine this evidence by arguing that it contradicts Mr. Pritt's first declaration.[1] *See* Filing No. 50 at 2 (citing *Howell v. Smith*, 853 F.3d 892, 899 n.18 (7th Cir. 2017)); *see also Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015) (holding that the Court may refuse to consider affidavits—often called "sham affidavits"—when they "contradict[] the affiant's previous testimony"). Even if the sham affidavit rule applies in this context, Mr. Pritt's two declarations are simply two descriptions of essentially the same facts. Merely because the second declaration includes Mr. Pritt's attestation that he requested a grievance form from the nurse does not mean that it contradicts his earlier declaration that was silent on the matter. Indeed, the very authority on which Deputy Brandou relies makes clear that subsequent testimony "'may attempt to clarify or augment (but not contradict)'" earlier testimony. *Howell*, 853 F.3d at 899 n.18 (quoting *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002)). Mr. Pritt's second declaration—in which he stated that he requested a grievance form from the nurse—merely "augments" his earlier testimony, which, understandably, focused on the merits of his claims rather than the issue of exhaustion since it was submitted in support of a motion for a preliminary injunction.[2]

---

[1] Mr. Pritt asserts that he is now attempting to grieve the assault. But Deputy Brandou is correct that "exhaustion must precede litigation." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *see* 42 U.S.C. § 1997e(a). Nevertheless, Mr. Pritt's current attempts to exhaust are irrelevant to the question of whether the exhaustion process was available to Mr. Pritt at the relevant time.

[2] Deputy Brandou also attempts to undermine Mr. Pritt's evidence that he requested a grievance form by pointing out that "he does not indicate what he was attempting to grieve." Filing No. 50 at 3. Thus, says Deputy Brandou, "[t]here is no reason to believe that [Mr.] Pritt meant to say 'I asked for a grievance form *in order to grieve about Deputy Brandou's use of force*.'" Filing No.

Against this evidence, Deputy Brandou presents essentially no evidence regarding the question of availability, even though it is his burden to prove that the administrative remedy process was available to Mr. Pritt. *See Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."); *Kaba*, 458 F.3d at 686 (holding that the defendants failed to meet "their burden of proving the availability of administrative remedies"). In response to Mr. Pritt's contention that he was not provided grievance forms and that the grievance process was otherwise unavailable, Deputy Brandou states that the Inmate Handbook "makes clear that the necessary forms could be requested from the mailroom staff," and that "Mr. Pritt does not claim that he made any such request." Filing No. 39 at 3. Thus Deputy Brandou's only evidence regarding the availability of the grievance process is the Inmate Handbook's statement as to where informal grievance forms may be obtained. His reliance on the fact that Mr. Pritt does not assert that he made such a request—which, as noted above, is not entirely true—is an attempt to place the burden on Mr. Pritt to prove that the grievance process was unavailable, when it is Deputy Brandou's burden to prove that it was available. *Cf. Dirig v. Wilson*, 609 Fed. Appx. 857, 859 (7th Cir. 2015) ("[T]hough the defendants in their brief repeatedly insist that [the plaintiff's] factual contentions are not supported by 'competent

---

50 at 3. But the determinative issue is whether the grievance process was available to Mr. Pritt, and again, Deputy Brandou bears the burden of proving it was available. *See Thomas*, 787 F.3d at 848. Thus, if the undisputed evidence shows, as it does, that Mr. Pritt could not access the grievance process at all, it is irrelevant that Mr. Pritt did not specifically attest that he wanted the informal grievance form to grieve his claim against Deputy Brandou. In other words, the undisputed evidence shows that the grievance process was unavailable to Mr. Pritt altogether, from which it follows that the grievance process was unavailable for Mr. Pritt's specific claim against Deputy Brandou.

evidence,' it was their burden to prove the availability of a remedy, since failure to exhaust is an affirmative defense.").

Given the foregoing, it is clear that Deputy Brandou has failed to meet his burden to show that the grievance process was available to Mr. Pritt. Evidence that, as a general matter, informal grievance forms can be requested from mail room staff is not evidence that Mr. Pritt specifically could have contacted mailroom staff to obtain such a form during his short stay at MCJ. *See Kaba*, 458 F.3d at 684 (holding that the grievance process is unavailable when "the process that exists on paper [is] unavailable in reality"). And Mr. Pritt has submitted undisputed evidence that he could not.

Accordingly, Mr. Pritt is entitled to summary judgment on Deputy Brandou's affirmative defense of exhaustion. The Seventh Circuit has made clear that the administrative remedy process is unavailable "if the prisoner can't obtain or complete the forms required to invoke them." *Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017). The undisputed evidence shows this is precisely what occurred when Mr. Pritt's request for a grievance form from the nurse was denied and, while on suicide status, his requests for writing utensils and request forms were denied.[3]

### IV.
### Conclusion

For the reasons explained above, Deputy Brandou's motion for summary judgment, dkt. [38], is **denied**, and Mr. Pritt's motion for summary judgment, dkt. [36], is **granted**. Given the

---

[3] Because this alone shows that the grievance process was unavailable to Mr. Pritt, the Court need not delve into his two alternative bases to show unavailability—namely, that his mental state and his fear of retribution from the correctional officers precluded him from completing the grievance process. Nor must the Court address an additional potential basis, which is whether an inmate who is at MCJ for only ten days could possibly complete MCJ's grievance process.

lack of disputed facts, there is no basis to hold a *Pavey* hearing on the exhaustion defense, and Deputy Brandou's exhaustion defense is **rejected**.

This action shall proceed to the merits of Mr. Pritt's excessive force claim against Deputy Brandou. Although Mr. Pritt's exhaustion submissions discuss the merits of other claims, such as a First Amendment claim, pursuant to the Court's Screening Entry, only an excessive force claim is proceeding in this action. A scheduling order shall issue by separate entry.

**IT IS SO ORDERED.**

Date: 8/25/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

STEVEN W. PRITT
196024
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov